MARGARET S. GROVER, PLAINTIFF V. JOHN W. NORRIS, DEFENDANT

No. COA99-471

(Filed 18 April 2000)

**Pleadings— Rule 11 sanctions—sufficiency of allegations**

Even though the trial court found plaintiff's claim for child support arrearages based on a consent order was barred by the statute of limitations, the trial court did not err in denying defendant's motion for monetary sanctions under N.C.G.S. § 1A-1, Rule 11 against plaintiff and her trial attorneys because: (1) the trial court's conclusions of law that plaintiff's pleadings were well-grounded in fact, were warranted by the existing law or a good faith argument, and were not interposed for an improper purpose,

are supported by its findings of fact; and (2) there was a legitimate question of whether the consent judgment could be considered a contract or a judgment.

Appeal by defendant from an order entered 4 January 1999 by Judge H. William Constangy in Mecklenburg County District Court. Heard in the Court of Appeals 13 January 2000.

*Guthrie, Davis, Henderson & Staton, P.L.L.C., by Dennis L. Guthrie, for plaintiff-appellee.*

*James, McElroy & Diehl, P.A., by G. Russell Kornegay, III and Paul P. Browne, for defendant-appellant.*

HUNTER, Judge.

Defendant-appellant, John W. Norris, appeals the trial court's ruling denying his motion for monetary sanctions against plaintiff-appellee, Margaret S. Grover, and her trial attorneys of the firm Guthrie, Davis, Henderson & Staton, P.L.L.C. Finding defendant's argument unpersuasive, we affirm the trial court's ruling.

The record before this Court reveals that the parties divorced in 1971 with plaintiff receiving custody of the couple's only child. On 29 July 1977 the trial court ordered defendant to pay child support in the amount of $85.00 every two weeks, and to establish a savings account for the parties' daughter by depositing a total of $4,000.00 at the rate of $1,000.00 per year for four years, which deposits would satisfy defendant's child support arrearages.

In 1982, plaintiff filed a motion to show cause, requesting the trial court hold defendant in contempt for his willful violation of the court's earlier child support order. However, prior to the hearing, the parties reached an agreement. It is this agreement that became the basis for the trial court's later consent order on 6 January 1983. In the order, the court found, in relevant part:

8. That the [prior] Order of this Court remains in force . . . .

9. That, by stipulation of the parties, the Defendant has failed, without lawful excuse, to make the support payments ordered by this Court . . . the arrearage owed to the Plaintiff is, at this time, no less than $6,100.00; and by stipulation of the parties, said arrearage, being an indebtedness of the Defendant owed to the Plaintiff, shall be reduced to judgment.

GROVER v. NORRIS

[137 N.C. App. 487 (2000)]

10. That, by stipulation of the parties, the Defendant has failed, without lawful excuse, to maintain the minor child's savings account in accordance with the [prior] Order . . . deposit[ing] and withdraw[ing] money at will . . . .

. . .

12. That, by stipulation of the parties, the Defendant has been, and continues to be, gainfully employed and able to make the child support payments and savings account deposits ordered by this Court . . . .

. . .

15. That, by stipulation of the parties, the Defendant and his second wife, Paula [] Norris, presently own certain improved real estate situated at 2021 Arapaho Drive, Mecklenburg County, North Carolina, as Tenants in Common . . . .

The trial court then made its conclusions of law and ordered, in pertinent part:

1. That the $6,100.00 arrearage . . . be reduced to judgment . . . with interest to accrue thereon at the lawful rate of eight percent (8%) per annum from and after November 8, 1982, until fully satisfied.

2. That satisfaction of the judgment, entered with respect to the $6,100.00 arrearage in the Defendant's child support obligations, shall be had by the Plaintiff from funds to be received by the Defendant at such time as [his] interest, as a Tenant in Common, of the [Arapaho] real estate . . . owned jointly by [him] and his second wife, Paula [] Norris, is disposed of either voluntarily or involuntarily.

In April 1982, defendant and his second wife Paula Norris ("Ms. Holt") divorced, still jointly owning the Arapaho property. On 17 May 1993, more than ten years after the consent order was entered, defendant transferred his interest in the Arapaho property to Ms. Holt, who then disposed of the property. Although defendant received his share of the proceeds from the property, he never paid his child support arrearages owed to plaintiff.

On 30 August 1995, plaintiff's attorney learned that defendant may have transferred the property without satisfying his child sup-

port arrearages. After further investigation, on 25 March 1996 plaintiff's attorney filed a complaint based on the 1983 consent order and judgment, seeking damages for breach of contract and fraud, and a motion to show cause asking that defendant be held in civil contempt for failure to pay the $6,100.00 arrearages as set forth in the 1983 judgment. Plaintiff further filed a motion for attachment for ancillary remedies in the underlying actions. The judge allowed plaintiff to attach defendant's automobile.

Defendant responded by filing his answer, a 12(b)(6) motion to dismiss based on the theory that the statute of limitations had run on the 1983 judgment. Defendant also filed a motion to dissolve attachment, motion to transfer to district court, motion for sanctions and counterclaims. Without objection by plaintiff, the case was transferred to district court (the proper venue for civil matters seeking damages of less than $10,000.00). At a hearing on 13 June 1996, the court granted defendant's motion to dismiss with prejudice. The court also granted defendant's motion to dissolve attachment since the attachment granted was based on the original claim which was now barred. However, the court denied defendant's motion for sanctions under Rule 11. Defendant appeals.

Defendant has brought forward only one assignment of error, that the trial court erred in denying his motion for Rule 11 sanctions against plaintiff. Defendant relies heavily on the idea that because the trial court found plaintiff's claim to be barred by the statute of limitations, plaintiff's attorneys should have known that at the time the suit was filed. Thus, the suit was filed frivolously and to harass defendant, in violation of N.C. Gen. Stat. § 1A-1, Rule 11. We disagree and thus overrule defendant's argument.

The pertinent portion of Rule 11(a) states:

Every pleading, motion, . . . shall be signed by at least one attorney of record . . . . The signature of an attorney . . . constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative,

shall impose upon the person who signed it, a represented party, or both, an appropriate sanction . . . .

N.C. Gen. Stat. § 1A-1, Rule 11(a) (1990). Made plain, the three things the signer is certifying to be true are that the pleadings are: (1) well grounded in fact, (2) warranted by existing law, "or a good faith argument for the extension, modification, or reversal of existing law," and (3) not interposed for any improper purpose. "A breach of the certification as to any one of these three prongs is a violation of the Rule." *Bryson v. Sullivan*, 330 N.C. 644, 655, 412 S.E.2d 327, 332 (1992).

North Carolina law is clear in its holding that the standard for this Court's reviewing the trial court's decision to impose or not to impose sanctions under Rule 11 is reviewable *de novo*.

> *De novo* review by an appellate court involves a determination of: (1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence. *If these elements are met, the trial court's decision to impose or deny sanctions is [to be] upheld.* The totality of the circumstances determine whether Rule 11 sanctions are merited. . . .
>
> A violation of any one of these three [determinatives] is sufficient to support sanctions under Rule 11.

*Williams v. Hinton*, 127 N.C. App. 421, 423, 490 S.E.2d 239, 240-41 (1997) (emphasis added) (citations omitted).

In the case at bar, the trial court found that after plaintiff's attorneys learned that defendant had transferred his interest in the Arapaho property:

> 11. [A] careful review was undertaken concerning the facts of the case. Legal theories of recovery were derived based upon application of the facts to the law. Pleadings and other papers were reviewed by the Plaintiff in order to insure factual accuracy and appropriate Affidavits were obtained. Thereafter, pleadings and other papers were filed on behalf of Margaret Grover.
>
> 12. The sole reason this action was instituted on behalf of the Plaintiff Margaret Grover, was to obtain satisfaction of the child support arrearage of $6,100.00 plus interest. This action was not instituted for any improper purpose. It was not instituted by

[plaintiff's] attorneys . . . to harass, persecute, otherwise vex John Norris or to cause unnecessary cost or delay.

13. Before pleadings and other papers were filed on behalf of Margaret Grover, [her attorney] was satisfied that by signing such pleadings, motions and other papers that he could in good faith certify that (1) he had read the pleading, motion, or other paper (2) that to the best of his knowledge, information, and belief, formed after reasonable inquiry, they were well grounded in fact, and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that none of the documents filed was interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. The same has been true throughout each of the various stages of this litigation.

The trial court further found that once defendant filed his response to plaintiff's motion to show cause and motion for sanctions, plaintiff's attorneys conducted further legal research and concluded that "a claim for legal redress could [still] properly be presented on behalf of Ms. Grover." Thus, plaintiff's attorneys proceeded with plaintiff's case.

The trial court further found, in pertinent part, that:

27. At the Court of Appeals level [plaintiff's attorneys] argued in good faith, and for a proper purpose. Those arguments included the well-founded argument that the Consent Judgment and Order was both a valid contract and an order of the court and that [Norris'] breach violated a court order.

28. The arguments presented by the former attorneys for Plaintiff Margaret S. Grover, in this case in all stages, although eventually unsuccessful, were instituted in good faith, after proper research into the facts of the case and applicable law.

29. Cases including dissenting opinions, rules, scholarly literature cited in Plaintiff's Brief in Support of the Appropriateness of Plaintiff's Pleadings and In Opposition to Defendant's Allegations of Rule 11 Misconduct provide support for this position.

30. [Plaintiff's attorneys] took Plaintiff's appeal in this case on a pro bono basis because there was ample reason to believe

the Plaintiff could recover that to which she was entitled under the laws of the State of North Carolina.

31. The Plaintiff and her former attorneys . . . undertook reasonable inquiry into the facts of this case and reasonably concluded that the pleadings, motions, notices, appellate filings and all other documents filed on behalf of the Plaintiff . . . were well grounded in fact.

32. At the time of filing each of the Plaintiff's pleadings, each such pleading was facially plausible.

33. At the time of filing each of the Plaintiff's pleadings, [and as the case progressed,] Plaintiff and her former attorneys had made reasonable inquiry concerning the legal sufficiency of the pleadings and reasonably concluded that each pleading was warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

. . .

35. The purpose of the Plaintiff's pleadings was not to harass the Defendant, persecute the Defendant, vex the Defendant, cause unnecessary costs to the Defendant or to cause delay.

36. The Defendant has not shown that the Plaintiff's pleadings were filed for an improper purpose.

37. The Plaintiff's purpose in bringing and pursuing this action was not improper.

38. The Plaintiff's former attorneys' purpose in bringing and pursuing this action was proper.

Following its very detailed findings of fact, the trial court then concluded as a matter of law that: (1) plaintiff's pleadings were well-grounded in fact, thus meeting the factual sufficiency prong of Rule 11; (2) plaintiff's pleadings were warranted by the existing law or a good faith argument for the extension, modification, or reversal of existing law, thus meeting the legal sufficiency prong of Rule 11; (3) plaintiff's pleadings were not interposed for an improper purpose, meeting the improper purpose prong of Rule 11; and (4) neither plaintiff nor her attorneys violated Rule 11, thus defendant's motion for Rule 11 sanctions should be denied. We agree.

Applying the *de novo* standard in reviewing the trial court's denial of defendant's motion for sanctions, we approve the trial court's find-

ings in their entirety, finding not only that its conclusions of law are supported by its findings of fact, but also finding that the record is replete with evidence to support those findings. *See Williams v. Hinton.* Therefore, we hold that the trial court's final determination not to impose sanctions on plaintiff is also well supported by its conclusions of law. *See id.*

Further, defendant's contention that plaintiff's complaint was legally insufficient because it was "long since" barred by the statute of limitations is unpersuasive.

Plaintiff argued before the trial court that the consent order was a contract which defendant breached. As such, the statute of limitations would not have begun to run until defendant's breach. Thus, plaintiff argued that the statute of limitations did not begin to run until 17 May 1993, when defendant transferred his interest in the Arapaho property. Nevertheless, the trial court found the consent order to be a judgment, adopted by the court.

In *Walters v. Walters*, 307 N.C. 381, 298 S.E.2d 338 (1983), our Supreme Court reviewed the law of consent decrees and held that

whenever the parties bring their separation agreements before the court for the court's approval, it will no longer be treated as a contract between the parties. All separation agreements approved by the court as judgments of the court will be treated similarly, to-wit, as court ordered judgments. These court ordered separation agreements, as consent judgments, are modifiable, and enforceable by the contempt powers of the court, in the same manner as any other judgment in a domestic relations case. . . . This new rule applies *only to* this case and all such *judgments entered after this decision.*

*Walters,* 307 N.C. at 386, 298 S.E.2d at 342 (emphasis added) (citations omitted).

Defendant argues that because the order was adopted by the court, the plaintiff had no reason to believe it was not a judgment instead of a contract. However, the case law cited by defendant, particularly *Henderson v. Henderson*, 307 N.C. 401, 298 S.E.2d 345 (1983), is no more helpful to defendant than *Walters, supra.* Both holdings apply prospectively, not retrospectively, and the consent judgment in the case at bar was entered five days before the *Walters* decision was filed (the *Walters* decision being filed before *Henderson*). Thus, the prior law controlled, that being that there

were two types of consent judgments: one, "which is nothing more than a contract . . . [and which] require[s] the parties to seek enforcement and modification through traditional contract channels;" and one that " 'the Court adopts' " thus making it "no longer enforc[able] or modifi[able] solely under contract law principles." *Walters*, 307 N.C. at 384-85, 298 S.E.3d at 341 (quoting *Bunn v. Bunn*, 262 N.C. 67, 69, 136 S.E.2d 240, 242 (1964)). Therefore, there was a legitimate question of whether the consent judgment could be considered a contract or a judgment.

We agree with plaintiff's attorneys that Rule 11 was instituted to prevent abuse of the legal system, our General Assembly never intending to constrain or discourage counsel from the appropriate, well-reasoned pursuit of a just result for their client. Case law clearly supports the fact that just because a plaintiff is eventually unsuccessful in her claim, does not mean the claim was inappropriate or unreasonable. An otherwise reading of the law would compromise every attorney's ability to pursue a claim where the status of the law is subject to dispute and force litigants to refrain from arguing all but the most clear-cut of issues. We do not believe this is what our Legislature intended.

Having found no violation of Rule 11 by plaintiff or her attorneys, the trial court's order denying sanctions against them is,

Affirmed.

Judges JOHN and McGEE concur.