Red Fox Future, LLC v. Holbrooks, 2014 NCBC 42.

STATE OF NORTH CAROLINA

POLK COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
11 CVS 108

RED FOX FUTURE, LLC and
ANDREY MEDVEDEV,

        Plaintiffs,

v.

GENE S. HOLBROOKS, HOME
REALTY CO. & INSURANCE AGENCY,
INC., TONY JACKSON, and RED FOX
PROPERTIES, LLC,

        Defendants.

**ORDER AND OPINION**

*Patla, Straus, Robinson & Moore, P.A., by Richard S. Daniels, for Plaintiffs Red Fox Future, LLC, and Andrey Medvedev.*

*Tuggle Duggins, P.A., by Robert C. Cone, for Defendants Gene S. Holbrooks and Home Realty Co. & Insurance Agency, Inc.*

*David Lloyd Law Office, by David A. Lloyd, for Defendants Tony Jackson and Red Fox Properties, LLC.*

Bledsoe, Judge

**THIS MATTER** is before the Court on Defendants Gene S. Holbrooks ("Holbrooks") and Home Realty Co. & Insurance Agency, Inc.'s ("Home Realty") (collectively, the "Holbrooks Defendants") Motion for Award of Attorneys' Fees and Costs (the "Motion") in the above-captioned case. Upon considering the Motion, the briefs filed in support of and in opposition to the Motion, and the arguments of counsel made at a hearing held on August 26, 2014, the Court hereby **DENIES** the Motion.

## I.
## BACKGROUND

{1}     The factual and procedural background of this case is recited in detail in *Red Fox Future, LLC v. Holbrooks*, 2014 NCBC 8 (N.C. Super. Ct. March 24, 2014), http://www.ncbusinesscourt.net/opinions/2014_NCBC_8.pdf (the "Summary Judgment Order").  The facts pertinent for purposes of resolving the present Motion are set forth below.

{2}     Holbrooks is the owner and president of Home Realty, a North Carolina corporation, which purchased the Red Fox Country Club (the "Club") in 1992.  *Id.* at ¶ 9.

{3}     Plaintiff Andrey Medvedev ("Medvedev") and Defendant Tony Jackson ("Jackson") formed Plaintiff Red Fox Future, LLC ("Future") in the summer of 2009, with the objective of purchasing the Club from the Holbrooks Defendants.  *Id.* at ¶¶ 11-12.  Medvedev, a Russian businessman, had played golf at the Club but was unfamiliar with its day-to-day business operations; Jackson, on the other hand, had worked at the Club since 1992, including as General Manager, and had a personal relationship with Holbrooks.  *Id.* at ¶¶ 9-11.  Plaintiffs allege that Medvedev's decision to invest in the Club was motivated, at least in part, by Jackson's knowledge of the Club and representations that he sought to invest in the venture personally.  (Compl. ¶ 8.)

{4}     On August 29, 2009, Future and the Holbrooks Defendants entered into a written agreement (the "Purchase Agreement"), pursuant to which Future agreed to purchase the Club from the Holbrooks Defendants for $2,850,000.  Summary Judgment Order at ¶¶ 13-14.  Of the total purchase price, $650,000 consisted of a

loan from the Holbrooks Defendants to Jackson.  *Id.* at ¶ 13.  Medvedev agreed to contribute $1,620,000, and the remaining $580,000 was to derive from outside investors.  *Id.* at ¶¶ 13-15.  The parties also agreed that neither Medvedev nor Future would be held liable in the event that Jackson defaulted on the loan from the Holbrooks Defendants.

{5}    Future encountered difficulty in attracting the outside investors needed to consummate its purchase of the Club.  Thus, as permitted under the Purchase Agreement, Future paid a total of $650,000 in non-refundable deposits to the Holbrooks Defendants in order to extend the closing date to April 1, 2010.[1]  *Id.* at ¶¶ 15-17.  Despite the additional time, however, Future was unable to raise sufficient funds through outside investors, and the deal fell through.  *Id.* at ¶ 18.

{6}    Soon thereafter, Jackson and the Holbrooks Defendants entered into negotiations for Jackson's purchase of the Club – without Medvedev or Future – through a newly formed entity, Red Fox Properties, LLC ("Properties").  *Id.* at ¶ 19.  This deal also fell through, however, and the Holbrooks Defendants subsequently listed the Club for sale at a purchase price of $2,200,000.  *Id.*

---

[1] The Purchase Agreement contemplated a closing date of October 15, 2009, with provisions for extension.  *Id.* at ¶ 15.  In accordance with these extension provisions, Future remitted to the Holbrooks Defendants a $100,000 non-refundable deposit, which, in addition to a $50,000 earnest money deposit paid by Future prior to closing, the Holbrooks Defendants retained in exchange for an extension of the closing date to December 10, 2009.  *Id.*  Additionally, and as prescribed under the Purchase Agreement, Future acquired possession of the Club – assuming both the benefits and burdens of its operations – upon this initial extension of the closing date.  *Id.* at ¶ 16  The parties subsequently executed an Addendum to the Purchase Agreement, pursuant to which Future paid to the Holbrooks Defendants an additional $500,000 non-refundable deposit in exchange for further extension of the closing date, as well as continued possession of the Club, through April 1, 2010.  *Id.* at ¶ 17.

{7}     On April 19, 2011, Medvedev and Future (collectively, "Plaintiffs") filed a complaint against the Holbrooks Defendants, Jackson, and Properties, asserting claims for fraud, unfair and deceptive trade practices, conversion, rescission, accounting, and recovery of assets and penalties. *Id.* at ¶ 2. Plaintiffs predicated their claims upon the theory that Jackson and the Holbrooks Defendants had fraudulently induced Plaintiffs into investing in the Club through their representations that Jackson – an individual intimately familiar with the Club's operations – would be indebting himself personally in order to invest in the Club as Medvedev's business partner in the venture. *Id.* at ¶ 20. More specifically, Plaintiffs alleged that they had reasonably relied on representations by Jackson and the Holbrooks Defendants, as memorialized in the Purchase Agreement, that Jackson would borrow $650,000 from the Holbrooks Defendants in connection with Future's purchase of the Club for $2,850,000; that Jackson and the Holbrooks Defendants, in fact, had never intended for a "real" loan to occur, but instead sought to confer upon Jackson a $650,000 equity stake in Future without Jackson making any initial contribution; and that Jackson and the Holbrooks Defendants had actively concealed the true nature of this "phantom loan" from Plaintiffs in order to induce Plaintiffs to enter into the Purchase Agreement. *Id.*

{8}     On August 25, 2011, after filing an Answer and Counterclaims, the Holbrooks Defendants moved to dismiss Plaintiffs' claims in their entirety pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. The Court entered an order denying the Holbrooks Defendants' Motion to Dismiss on May 8, 2012.

{9} On October 15, 2012, the Holbrooks Defendants moved for summary judgment on all of Plaintiffs' claims against them. *Id.* at ¶ 5. In support of their motion, the Holbrooks Defendants asserted, *inter alia*, that Plaintiffs had failed to introduce any evidence to support their fraud theory and that, in any event, Plaintiffs were unable to prove that they had suffered any damages as a result of the Holbrooks Defendants' alleged misrepresentations because the Purchase Agreement – which Plaintiffs' counsel had drafted – required that the Holbrooks Defendants close on the deal even if their loan to Jackson fell through. (Defs.' Br. Supp. S.J. Mot., pp. 6-11.). The Holbrooks Defendants also pointed out that all parties had agreed and understood that Jackson would sign the $650,000 promissory note evidencing their loan to him at the time of closing. (*Id.*)

{10} On March 24, 2014, this Court (Murphy, J.) entered the Summary Judgment Order, granting summary judgment in favor of the Holbrooks Defendants and dismissing all of Plaintiffs' claims against the Holbrooks Defendants with prejudice. Summary Judgment Order at ¶¶ 1-2.[2] The Summary Judgment Order rejected Plaintiffs' fraud claim on grounds that Plaintiffs were unable to prove damages, irrespective of whether the alleged collusion between Jackson and the Holbrooks Defendants had taken place. *Id.* at ¶ 30. The Summary Judgment Order also dismissed Plaintiffs' claims for unfair and deceptive trade practices and

---

[2] The Summary Judgment Order also denied Plaintiffs' request to cap the amount of damages recoverable on the counterclaims asserted against them, *Id.* at ¶ 42; denied Plaintiffs' motion for summary judgment on counterclaims asserted against Future for breach of fiduciary duty, constructive fraud, unfair and deceptive trade practices, punitive damages, and specific performance, *Id.* at ¶¶ 47, 51, 57; dismissed with prejudice all of the counterclaims asserted against Medvedev, *Id.* at ¶ 72; and granted the Holbrooks Defendants' Motion to Exclude or Limit the Testimony of John R. Markel, CPA, *Id.* at ¶ 79.

rescission, which were predicated, in part, upon Plaintiffs' fraud claim. *Id.* at ¶¶ 34, 36. In addition, the Summary Judgment Order dismissed Plaintiffs' claim for recovery of the deposits at issue, reasoning that forfeiture of the deposits did not constitute an impermissible penalty, but rather was part of bargained for exchanges in which Plaintiffs not only received additional time to seek investors, but also continued in possession of the Club's properties and the revenue stream produced through its operations. *Id.* at ¶¶ 40-41.

{11} The Holbrooks Defendants now seek an award of attorneys' fees and costs incurred in defending against Plaintiffs' claims – the claims that were dismissed with prejudice in the Court's Summary Judgment Order. The Holbrooks Defendants assert that they are entitled to the requested relief under each of the following provisions: N.C. Gen. Stat. § 75-16.1; N.C. Gen. Stat. § 6-21.5; N.C. Gen. Stat. § 1D-45; and Rule 11 of the North Carolina Rules of Civil Procedure. The Court will address the Holbrooks Defendants' claim for attorneys' fees and costs under each of these provisions, in turn, below.

## II.
## ANALYSIS

{12} "It is settled law in North Carolina that ordinarily attorneys fees are not recoverable either as an item of damages or of costs, absent express statutory authority for fixing and awarding them." *United Artists Records, Inc. v. Eastern Tape Corp.*, 18 N.C. App. 183, 187, 196 S.E.2d 598, 602 (1973) (citing *Bowman v. Chair Co.*, 271 N.C. 702, 157 S.E.2d 378 (1967)). "Statutes that award attorney's fees to the prevailing party are in derogation of the common law and as a

result, must be strictly construed." *Barris v. Town of Long Beach*, 208 N.C. App. 718, 722, 704 S.E.2d 285, 289 (2010) (citing *Sunamerica Financial Corp. v. Bonham*, 328 N.C. 254, 257, 400 S.E.2d 435, 437 (1991)).

## N.C. Gen. Stat. § 75-16.1

{13} The Holbrooks Defendants contend that they are entitled to an award of attorneys' fees and costs under N.C. Gen. Stat. § 75-16.1. The Court may award "a reasonable attorney fee" and litigation costs to a prevailing party in an action under N.C. Gen. Stat. § 75-16.1, where the losing party, in "instituting the action knew, or should have known, the action was frivolous and malicious." N.C. Gen. Stat. § 75-16.1(2) (2014); *see also McKinnon v. CV Indus., Inc.*, __ N.C. App. __, __, 745 S.E.2d 343, 349-50 (2013) ("N.C. Gen. Stat. § 75-16.1 authorizes an award of attorney's fees to the prevailing party in a suit alleging a Chapter 75 violation . . . if the plaintiff knew, or should have known, the action was frivolous or malicious" (citing N.C. Gen. Stat. § 75-16.1(2)). "'A claim is frivolous [under N.C. Gen. Stat. § 75-16.1] if a proponent can present no rational argument based upon the evidence or law in support of [it]. A claim is malicious [under N.C. Gen. Stat. § 75-16.1] if it is wrongful and done intentionally without just cause or excuse or as a result of ill will.'" *Blyth v. McCrary*, 184 N.C. App. 654, 663 n.5, 646 S.E.2d 813, 819 n.5 (2007) (quoting *Rhyne v. K-Mart Corp.*, 149 N.C. App. 672, 689, 562 S.E.2d 82, 94 (2002)). An "award of attorneys' fees under G.S. [§] 75-16.1 is within the sound discretion of the trial judge." *Borders v. Newton*, 68 N.C. App. 768, 770, 315 S.E.2d 731, 732 (1984).

{14}  In support of their position, the Holbrooks Defendants assert that Plaintiffs' allegations concerning the loan from the Holbrooks Defendants to Jackson were "irrelevant," *see* Summary Judgment Order at ¶ 29 (stating that "[w]hether Defendants and Jackson intended the loan to be real or not is irrelevant"); that "Plaintiffs knew or should have known their respective claims were frivolous, malicious, and non-justiciable"; and that Plaintiffs "produced no evidence tending to show that either Jackson or [the Holbrooks Defendants] intended the loan to be a sham . . . nor any evidence tending to show that the deposit amounts were (1) not a reasonable estimate of damages which would result from a breach or (2) not reasonably proportionate to damages actually caused by the breach."  (Defs.' Br. Supp. Mot., pp. 4-5.)  The Holbrooks Defendants additionally argue that Plaintiffs' "claims for rescission and unconscionability lacked any factual basis," pointing out that it was Plaintiffs' "own counsel [who] prepared the contract at issue."  (Defs.' Br. Supp. Mot., p. 5.)

{15}  Plaintiffs respond that their fraud claim against the Holbrooks Defendants was not frivolous or malicious at any point in these proceedings.  Plaintiffs insist that they brought their fraud claim for the sole purpose of recovering the deposits that they had paid to the Holbrooks Defendants under the terms of the Purchase Agreement, funds which Plaintiffs believe they were duped into paying through Jackson and the Holbrooks Defendants' alleged misrepresentations concerning Jackson's investment in the Club.  Plaintiffs further contend that the evidence produced through discovery supported their allegations that Jackson and the

Holbrooks Defendants had always intended the $650,000 loan as a "phantom loan"; that the true purchase price sought by the Holbrooks Defendants for the Club was $2,200,000 – i.e., the $2,850,000 purchase price as stated under the Purchase Agreement less the $650,000 credited to Jackson through the phantom loan; and "that, but for the Plaintiffs' belief in and reliance upon the existence of that personal investment in the transaction by Jackson, the Plaintiffs would have never agreed to the Deposits which they made and thereafter lost." (Pls.' Br. Opp. Mot., p. 9.)  Further, Plaintiffs assert that even if their fraud claim was "frivolous and malicious," Plaintiffs could not reasonably have been aware of this fact at any time prior to their receipt of the Summary Judgment Order. (*Id.*)

{16}  The Court is persuaded that the record evidence, as revealed through discovery, demonstrates that Plaintiffs' claims were not "frivolous" as contemplated under N.C. Gen. Stat. § 75-16.1.  The Court bases its conclusion on the evidence that (i) the Holbrooks Defendants and Jackson contemplated a $1,798,000 contract for Jackson's purchase of the Club – through his recently formed entity, Properties, and without Plaintiffs' involvement – in May 2010, only ten days after the Holbrooks Defendants terminated the Purchase Agreement, which, as previously stated, had contemplated the Holbrooks Defendants' sale of the Club to Plaintiffs for $2,850,000; (ii) the Holbrooks Defendants entered into another sales agreement with Jackson and Properties in July 2010, under which the purchasers were credited with $650,000 toward the $2,348,000 stated purchase price, leaving a balance of $1,798,000; (iii) when the Holbrooks Defendants' sale of the Club to

Jackson and Properties fell through, the Holbrooks Defendants listed the Club for sale in December 2010 for a purchase price of $2,200,000; and (iv) Holbrooks refused in his testimony to explain why he had been willing to sell the Club for significantly less than the $2,850,000 purchase price that the parties had agreed upon under the Purchase Agreement.[3]  This evidence, although deemed insufficient to withstand the Holbrooks Defendants' motion for summary judgment, provides a rational basis for Plaintiffs' theory that the Holbrooks Defendants' "true" selling price for the Club was $2,200,000 and that the $2,850,000 selling price stated in Purchase Agreement was merely a device intended to grant Jackson a $650,000 equity stake in the Club, while inducing Plaintiffs to contribute the bulk of the purchase price.  The Court concludes that Plaintiffs reasonably could have believed, in light of this evidence, that a jury reasonably could have concluded that Plaintiffs had stated a claim for which they were entitled to recovery of a damages award.[4]  Accordingly, the Holbrooks Defendants' request for attorneys' fees and costs under N.C. Gen. Stat. § 75-16.1 is denied.

## N.C. Gen. Stat. § 6-21.5

{17}  The Holbrooks Defendants also contend that they are entitled to an award of attorneys' fees and costs under N.C. Gen. Stat. § 6-21.5, which provides that "[i]n

---

[3] There are, of course, a number of possible explanations – such as a change in market conditions and/or a desire to sell the Club quickly – that would reasonably justify Holbrooks' decision to list the Club on the market at a reduced price.  Holbrooks, however, declined to offer any such explanation in his testimony.

[4] The Court notes Plaintiffs' contention that their fraud claim was not "malicious" within the meaning of N.C. Gen. Stat. § 75-16.1(2), which, as stated above, permits an award of costs where the losing party's conduct is both "frivolous *and* malicious."  (Emphasis added.)  Having concluded that Plaintiffs' claims were not "frivolous," however, the Court declines to explore any distinction between a claim that is "frivolous" and a claim that is "malicious" under N.C. Gen. Stat. § 75-16.1.

any civil action or special proceeding the court, upon motion of the prevailing party, may award a reasonable attorney's fee to the prevailing party if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading." N.C. Gen. Stat. § 6-21.5 (2014). "'Complete absence of a justiciable issue' suggests that it must conclusively appear that such issues are absent even giving the losing party's pleadings the indulgent treatment which they receive on motions for summary judgment or to dismiss." *Sprouse v. North River Ins. Co.*, 81 N.C. App. 311, 326, 344 S.E.2d 555, 565 (1986) (citing *Vassey v. Burch*, 301 N.C. 68, 269 S.E. 2d 137 (1980)). "[B]efore a court may tax attorney fees against a losing party under N.C.G.S. § 6-21.5 based upon the complete absence of a justiciable *legal* issue, the prevailing party must provide proof that the losing party should reasonably have been aware of the complaint's legal deficiencies." *Bryson v. Sullivan*, 102 N.C. App. 1, 16, 401 S.E.2d 645, 656 (1991) (emphasis in original).

{18}   The Holbrooks Defendants contend that they are entitled to an award of attorneys' fees under N.C. Gen. Stat. § 6-21.5 because "[t]he existing law on all of plaintiffs' theories was clearly against them" and because Plaintiffs' claims lacked any factual or legal support. (Defs.' Br. Supp. Mot., p. 5.) The Court disagrees. Plaintiffs' complaint set forth detailed allegations concerning the circumstances giving rise to their claims for fraud and recovery of their deposits, including, for example, Jackson's familiarity with the Club's operations as its General Manager; Jackson's relationship with Holbrooks; and Jackson's alleged representations to Medvedev concerning the Holbrooks Defendants' intent to sell the Club and the

terms of the potential sale.  The entirety of the alleged scheme was laid out in

Plaintiffs' complaint.  Contrary to the Holbrooks Defendants' contentions, Plaintiffs

were able to produce evidence through discovery to strengthen their claims, as

discussed above.  The fact that the Court ultimately granted summary judgment in

Holbrooks Defendants' favor with respect to Plaintiffs' claims "is not 'in itself a

sufficient reason for the court's decision to award attorney's fees' under N.C.G.S. §

6-21.5." *Brooks v. Giesey*, 334 N.C. 303, 311, 432 S.E.2d 339, 343 (1993) (quoting

N.C. Gen. Stat. § 6-21.5); *see also Brittain v. Cinnoca*, 111 N.C. App. 656, 662, 433

S.E.2d 244, 247 (1993) (denying award of attorneys' fees under N.C. Gen. Stat. § 6-

21.5 notwithstanding dismissal of plaintiffs' claims).  Indeed, it is reasonable to

infer from Plaintiffs allegations and the evidence adduced in support thereof that

Plaintiffs were not aware of the deficiencies in their claims until their receipt of the

Summary Judgment Order, and, accordingly, the Court cannot conclude that

Plaintiffs "persisted in litigating the case after a point where [Plaintiffs] should

reasonably have become aware that the pleading [Plaintiffs] filed no longer

contained a justiciable issue." *Sunamerica Financial Corp.*, 328 N.C. at 258, 400

S.E.2d at 438.  The Holbrooks Defendants' request for attorneys' fees and costs

under N.C. Gen. Stat. § 6-21.5 is, therefore, denied.[5]

### N.C. Gen. Stat. § 1D-45

---

[5] Having concluded that Plaintiffs' fraud claim presents justiciable issues of law or fact, it is unnecessary to inquire into whether Plaintiffs' claim for recovery of penalties likewise presents justiciable issues of law or fact. *Lincoln v. Bueche*, 166 N.C. App. 150, 155-56, 601 S.E.2d 237, 243 (2004) (concluding that the trial court had erroneously awarded attorneys' fees under N.C. Gen. Stat. § 6-21.5 upon determining that one of the plaintiffs' seven asserted claims presented a justiciable issue of law or fact).

{19}   N.C. Gen. Stat. § 1D-45 provides, in pertinent part, that "[t]he court shall award reasonable attorneys' fees, resulting from the defense against the punitive damages claim, against a claimant who files a claim for punitive damages that the claimant knows or should have known to be frivolous or malicious."  N.C. Gen. Stat. § 1D-45.  The Court, however, has already concluded, *supra*, that Plaintiffs' claims were not frivolous, and the Holbrooks Defendants have not introduced any evidence to suggest that Plaintiffs' claims were "malicious," or, more specifically, that they were "'wrongful and done intentionally without just cause or excuse or as a result of ill will.'"  *Blyth*, 184 N.C. App. at 663 n.5, 646 S.E.2d at 819 n.5 (quoting *Rhyne*, 149 N.C. App. at 689, 562 S.E.2d at 94).[6]  As a result, the Holbrooks Defendants' request for attorneys' fees under N.C. Gen. Stat. § 1D-45 is denied.

## N.C. Gen. Stat. § 1A-1, Rule 11

{20}   Rule 11 of the North Carolina Rules of Civil Procedure applies to "[e]very pleading, motion, and other paper of a party [.]"  N.C. Gen. Stat. § 1A-1, Rule 11(a) (2014).  "According to Rule 11, the signer certifies that three distinct things are true: the pleading is (1) well grounded in fact; (2) warranted by existing law, 'or a good faith argument for the extension, modification, or reversal of existing law' (legal sufficiency); and (3) not interposed for any improper purpose."  *Bryson v. Sullivan*, 330 N.C. 644, 655, 412 S.E.2d 327, 332 (1992).  "A breach of the certification as to any one of these three prongs is a violation of the Rule."  *Id.*

---

[6] The Court recognizes that *Blyth* addressed the "malicious" standard in the context of N.C. Gen. Stat. § 75-16.1; however, having found no authority to indicate that the standard is otherwise, the Court adopts this standard for "malicious" for the limited purpose of resolving the Holbrooks Defendants' claim under N.C. Gen. Stat. § 1D-45 in the present case.

Moreover, in determining whether to award attorneys' fees under Rule 11, "reference should be made to the document itself, and the reasonableness of the belief that it is warranted by existing law should be judged as of the time the document was signed. Responsive pleadings are not to be considered." *Id.* at 656, 412 S.E.2d at 333. The question for the court is whether the plaintiffs acted with "objective reasonableness under the circumstances" in signing the pleading in question. *Turner v. Duke University*, 325 N.C. 152, 164, 381 S.E.2d 706 (1989); *see also McKinnon*, __ N.C. App. at __, 745 S.E.2d at 347 (explaining that "'Rule 11 sanctions are appropriate where the offending party either failed to conduct a reasonable inquiry into the law or did not reasonably believe the paper was warranted by existing law'" (quoting *Ward v. Jett Props., LLC*, 191 N.C. App. 605, 608, 663 S.E.2d 862, 864 (2008))).

{21} The Holbrooks Defendants contend that they are entitled to attorneys' fees and costs under Rule 11 because "Medvedev was well aware of the bargained-for exchange surrounding the deposits"; because Medvedev knew, at the time he made the deposits, that Jackson had not yet signed the promissory note evidencing the loan to him from the Holbrooks Defendants; and because no evidence of a "phantom loan" was ever produced. (Defs.' Br. Supp. Mot., p. 6). The Court disagrees. A thorough review of Plaintiffs' complaint reveals detailed allegations predicated upon Plaintiffs' apparent good faith belief that the Holbrooks Defendants and Jackson had defrauded them out of $650,000 in deposit money. Furthermore, and as discussed in detail above, Plaintiffs' theory of recovery was not wholly unsupported

by the evidence produced through discovery. Accordingly, this is not a case in which the imposition of Rule 11 sanctions would further the Rule's purpose of "prevent[ing] abuse of the legal system[,]" *Grover v. Norris*, 137 N.C. App. 487, 495, 529 S.E.2d 231, 235 (2000). The Holbrooks Defendants' request for attorneys' fees and costs under Rule 11 is, therefore, denied.

## III.
## CONCLUSION

{22} For the above stated reasons, the Holbrooks Defendants' Motion for Award of Attorneys' Fees and Costs is **DENIED**.

**SO ORDERED**, this the 9th day of September, 2014.