HUNTER, JR., ROBERT N., Judge, concurring in part and dissenting in part.
I agree with the majority that this Court has jurisdiction to hear Appellant's appeal. However, I must respectfully dissent from the majority's analysis in favor of affirming the trial court.
"The trial court's decision to impose or not to impose mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a) is reviewable de novo as a legal issue. In the de novo review, the appellate court will determine (1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency *386 of the evidence. If the appellate court makes these three determinations in the affirmative, it must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a)." Turner v. Duke Univ., 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989). Second, "in reviewing the appropriateness of the particular sanction imposed, an 'abuse of discretion' standard is proper because '[t]he rule's provision that the court "shall impose" sanctions for motions abuses ... concentrates [the court's] discretion on the selection of an appropriate sanction rather than on the decision to impose sanctions.' " Id. (quoting Westmoreland v. CBS, Inc., 770 F.2d 1168, 1174 (D.C.Cir.1985) ). *575 The majority contends "many of the superior court's findings are not supported by the evidence." A full review of the record shows the following, in addition to the facts set forth by the majority.
Dementia runs in Frank Cranor's ("Petitioner") family. His mother and maternal aunt struggled with the disease, and he is aware that he and his sister, Carole Cranor ("Respondent"), face an increased likelihood of suffering from the disease. In 2000, Respondent began complaining of memory issues to Petitioner. In 2006, Respondent and Petitioner were emotionally strained when their mother's health deteriorated. Respondent was tasked with managing her mother's affairs, but her declining capacity failed her as a caretaker, and Petitioner took over as his mother's caretaker, which caused some turmoil.
According to Petitioner, he and Respondent reconciled in 2009. Sometime in 2010-2011, Respondent told Petitioner she had quit her job and collected disability due to her memory problems. Petitioner visited Respondent in 2011, and he discovered she had hygiene issues because she did not remember to shower. He grew concerned for her, but had confidence that Respondent's ex-husband was caring for her.
Respondent's memory became significantly worse in 2012-2013. In April 2013, Respondent's ex-husband called Petitioner and told him that Respondent had fallen and her friend and attorney, Harriet Hopkins ("Hopkins"), had taken her to the hospital. Then, Respondent learned that Hopkins "had taken control of [Respondent's] personal affairs and [ ] estate" by drafting a durable power of attorney document that gave Hopkins "the unilateral right to gift to herself any or all of [Respondent's] property without any duty to provide an accounting to anyone." This shocked Petitioner and made him feel that Respondent's "personal and financial well-being were in too much jeopardy to continue to refrain from taking action to protect her from herself and others, particularly [ ] Hopkins."[8]
Respondent was discharged from the hospital and admitted to an assisted living facility. After some time, Petitioner called a nursing assistant to check on Respondent and she said Respondent's condition was "poor."
*576 On 3 June 2013, Petitioner filed a petition[9] to have Respondent adjudicated incompetent and have a general guardian appointed to protect her. Petitioner nominated himself to be Respondent's general guardian but he also contacted guardian ad litem ("GAL") Kelly Black-Oliver, and " adamantly [expressed to her] that he did not necessarily wish to be [Respondent's general] guardian, just that [he wanted] one [ ] appointed so that there was some accountability."
When the petition was filed, attorney Lynn Andrews ("Appellant"), was appointed to serve as Respondent's GAL. She immediately withdrew from the case as GAL and stated she had a conflict of interest because she is a friend of Hopkins' and discussed the case with her. Thereafter, Ms. Black-Oliver was appointed as GAL.
*387 Several days later, Petitioner's counsel asked Ms. Black-Oliver if she would agree to have a forensic psychiatrist from Duke University examine Respondent. Ms. Black-Oliver agreed "that was a prudent thing to do," and the parties scheduled the examination on a Saturday. Appellant sent an email to Petitioner's counsel Saturday morning and stated, "I'm representing [Respondent], and I'm not going to allow this evaluation." The parties went to Respondent's assisted living facility so Ms. Black-Oliver could interview Respondent and the forensic psychiatrist could examine Respondent, but Appellant intervened "to try to delay or prevent Ms. Black-Oliver from speaking to [Respondent]."
On 13 June 2013, Appellant stated in a written motion that Respondent retained her as counsel. Appellant moved to stay the multidisciplinary evaluation ("MDE"). She obtained an ex parte order staying the MDE. The parties were heard on the matter on 14 June 2013. At the hearing, Appellant debated the proper procedure to schedule a MDE and stated the following:
And we've already said that we will admit that [Respondent] has limited capacity. We're not alleging she's incompetent. If [Petitioner's counsel] says this is a contested case on incompetency, he's wrong. We will concede that the Respondent has early stage dementia or Alzheimer's. That's the reason she's in an assisted living facility....
And, again, I don't blame Ms. Black-Oliver. I think [Petitioner's counsel] has been pushing and bullying and *577 trying to do everything as fast as he can in this case, but there's just nothing there. A[MDE] is appropriate in a case where incompetency is at question or contested. We'd advised him we're not contesting that [Respondent] has limited capacity.... And we will admit that [Respondent] has a diagnosis of early onset, early stage dementia. She's very forgetful.... Apparently [Petitioner's counsel] is trying to have [Respondent] declared completely incompetent with a full guardianship stripping her of every right she can possibly have.
Thereafter, the parties questioned Ms. Black-Oliver. Petitioner's counsel questioned Ms. Black-Oliver as follows:
[PETITIONER'S COUNSEL]: Did [Appellant] threaten to have you disqualified [as guardian ad litem ]?
[MS. BLACK-OLIVER]: I believe she stated that it was her intention to do so yesterday, but she has not done so yes-yet.
[PETITIONER'S COUNSEL]: And did she go to the Public Defender who is the person that appoints the guardian ad litems to complain that you had acted inappropriately and/or colluded and/or threatened to kidnap [Respondent] to your knowledge?
[MS. BLACK-OLIVER]: That is summarily my understanding.
Ms. Black-Oliver also testified that Petitioner is "independently wealthy himself" and "[r]eceived the same split of inheritance that [Respondent] received." She stated, "[A]ny potential concerns I would have of [Petitioner's] interest in the proceedings being financial and having control of [Respondent's] assets was [sic] quelled...."
At the conclusion of the hearing Petitioner's counsel asked the trial court to dissolve the MDE stay, and to disqualify Appellant as Respondent's counsel. The trial court stayed the MDE and denied Petitioner's motion to disqualify.
One week later, on 21 June 2013, Appellant filed a Rule 12(b)(6) motion to dismiss the petition. She alleged, "The Petition fails to state any facts tending to support a finding that the Respondent is an 'Incompetent Adult' as defined by NCGS 35A-1101(7). The Petition *578 contains no factual allegations tending to show that the Respondent lacks sufficient capacity to manage her own affairs...."
Petitioner filed a verified amended petition on 10 July 2013 and Appellant filed a response in which she admitted the following:
The Respondent admits that when she was living alone, her memory problems and inability to drive adversely impacted her ability to prepare adequate meals for herself, which led to her being hospitalized *388 after a fall due to dehydration.... Respondent admits that during the time when she was living alone, she might have been vulnerable to being taken advantage of by unscrupulous persons offering to perform services on her home. Since the Respondent wisely decided to move into a facility where she no longer has the responsibility of keeping up a house and where there are other people around to look after her, this is no longer an issue.
The parties were heard on the motion to dismiss on 3 July 2013, and the Clerk of Durham County Superior Court concluded the Standard Form AOC-SP-200 petition was not specific enough. The Clerk dismissed the case without prejudice, allowing Petitioner to re-file or appeal to Superior Court "for trial de novo" and told Petitioner's counsel to "keep intact all the work you've done...."
Afterwards, Appellant prepared a draft order for dismissal with prejudice and emailed it to the Clerk without first allowing Petitioner's counsel to review it. The Clerk signed the order and backdated it six days without consent of the parties. Petitioner's counsel emailed the Clerk and told him the order should be without prejudice and asked him to correct it. The Clerk declined to do so and told Petitioner's counsel that changes would only be made if Appellant consented to them. Consequently, Petitioner appealed to Superior Court.
In Superior Court, Appellant sought to limit the scope of the appeal to only the issue of dismissal. The Superior Court issued an order stating, "[Petitioner] is entitled to a de novo hearing ... in accordance with G.S. 35A-1115 ... [and the appeal is not] limited to the record before the Clerk of Court." The Superior Court signed a MDE order to have Respondent evaluated and allowed Petitioner to amend his petition. The Superior Court scheduled the case for an evidentiary hearing.
Appellant appealed the Superior Court's order and argued Petitioner had no right to appeal from a Clerk of Court's dismissal. She argued the *579 Clerk's dismissal should have been without prejudice, and the trial court remanded the case to the Clerk to allow him to amend the order, which the Clerk did on 2 October 2013. Once the Clerk amended the order to reflect the dismissal was without prejudice, the Superior Court entered an order dismissing Petitioner's appeal for lack of standing.
On 28 October 2013, Appellant filed a motion for attorneys fees pursuant to N.C. Gen.Stat. § 6-21.5, and alleged Petitioner and his counsel filed a nonjusticiable case when they petitioned to have Respondent declared incompetent. Appellant alleged the following, inter alia:
6. After the dismissal of [the original] Petition and Amended Petition and [the] appeal to Superior Court, Petitioner continued to file numerous pleadings that had no relevance to the issues pertinent to his pending appeal in a last-ditch effort to unearth some evidentiary support for his unsubstantiated claim that the Respondent is incompetent....
9. [After a MDE stating Respondent has the capacity to manager her affairs] Petitioner continued to pursue this litigation, seeking additional discovery and further continuances, long after the time limit for a hearing prescribed by G.S. 35A-1108 had passed, and in the face of overwhelming evidence that Respondent is not incompetent and does not need a guardian....
14. Petitioner did not have reasonable grounds to bring this proceeding, as shown by: the complete lack of any allegation or evidence tending to show that Respondent is incompetent; the complete lack of any medical evidence for such alleged incompetence; and the complete lack of any valid reason why an adjudication of incompetence was sought....
16. The pleadings filed in this special proceeding reveal a complete absence of any justiciable issue of either law or fact....
17. Petitioner did not advance any claim supported by a good faith argument for an extension, modification, or reversal of law in this proceeding.
Appellant filed a second motion on 28 October 2013 against Petitioner and Petitioner's counsel for Rule 11 sanctions. Appellant alleged the following, inter alia:
*389 *580 1. .... [The 22 May 2013] Petition did not contain any statements or allegations made upon information and belief....
3. The Petition and other pleadings filed for Petitioner by his Attorney were presented for an improper purpose, such as intimidation or harassment of Respondent, [Appellant], [Hopkins], and other witnesses, and to cause unnecessary delay or needlessly increase the cost of litigation, in that:
a. The affidavit and other pleadings ... strongly suggest that the reason Petitioner initiated this proceeding is because Petitioner does not like [Hopkins], rather out of than [sic] any genuine concern for Respondent's welfare....
i. After the Clerk dismissed his Petition and Amended Petition and Petitioner elected to appeal said dismissal rather than initiate a new proceeding, Petitioner filed a barrage of voluminous and frivolous motions, requests, notices, and memoranda that had no relevance to the issues pertaining to Petitioner's appeal and said appeal was ultimately dismissed by the Superior Court for lack of standing ...
[5.] e. Attorney for the Petitioner had ample time to investigate this matter, both before and after the filing of his Petition and, long past the timeframe prescribed by G.S. 35A-1108 for holding a hearing on his Petition for Adjudication of Incompetency, still had no evidentiary support for Petitioner's claim that Respondent is incompetent and would be unlikely to find any evidentiary support for such a claim.
On 21 December 2013, Petitioner and Petitioner's counsel moved for Rule 11 sanctions against Appellant. They alleged Appellant's motions for sanctions, attorneys fees, and costs violated Rule 11. On 17 December 2013, they filed a thirty-four page brief in response to Appellant's motions and included seventeen exhibits that included deposition and hearing transcripts, affidavits, email messages, and other pertinent information.
The parties were heard on the Rule 11 motions in Superior Court on 8 September 2014 through 10 September 2014. The trial court reviewed the entire record, heard arguments of counsel, and read counsel's briefs. In a 12 September 2014 order, the trial court made the following findings of fact and conclusions of law:
Findings of Fact *581 1. Petitioner in this case, Respondent's brother, had been concerned about Respondent's health and well-being for several years preceding the filing of the petition in this case. These concerns were vastly increased when he received an email from Harriet Hopkins dated May 2, 2013 in which she informed him that his sister had really declined over the last month and expressed concerns about her worsening memory and physical issues, including bad falls and dehydration which she described as symptoms of dementia. She told him it was pretty clear that it was a safety risk for her to live alone.
2. The original petition was filed in this case on June 3, 2013, with the Durham County Clerk of Court, using Form AOC-SP-200. It alleged that Respondent lacked sufficient capacity to manage her own affairs, etc., and supported those allegations with facts that basically repeated what Hopkins told him in the email. It was signed and verified by Petitioner. There is not a place on Form AOC-SP-200 for Petitioner's attorney to sign....
11. [Appellant] has repeatedly argued to this Court and to others in this case that because Petitioner refused to consent to a limited guardianship with Harriet Hopkins as the guardian, that he was seeking to take away all of Respondent's rights. That argument is a misrepresentation of the facts and the law.
11. [sic] The Clerk of Court, after he dismissed the petition is this case on Rule 12(b)(8) grounds, advised [Petitioner's counsel] that he could appeal for a trial de novo before a Superior Court judge and that he could have a jury trial. (Emphasis added).
12. Superior Court Judge Paul Ridgeway also ordered the case set for a hearing on the merits in Superior Court in his August 8, 2013 Order, based on his understanding *390 at that time that the Clerk's dismissal was with prejudice.
13. Based on the advice of the Clerk, Judge Ridgeway's Order and [Petitioner's Counsel's] interpretation of the law, [Petitioner's Counsel] began to prepare for trial in Superior Court. That preparation included signing and *582 filing the pleadings complained of by Respondent in her Rule 11 motions....
15. The record in this proceeding, including but not limited to the May 2, 2013, email of Harriet Hopkins, the durable power of attorney of Respondent that was drafted by Ms. Hopkins, and the admissions of [Appellant] and [Ms. Black-Oliver] as to the incompetence of the Respondent, clearly establishes the justiciability of the issues presented by the petition in this proceeding....
17. [Appellant], who has the burden of proof to support her motions for sanctions, fails to identify any legal authority or provide any basis for a good faith argument for the extension, modification, or reversal of existing law as a basis to impose sanctions on the Petitioner and [his counsel] under Rule 11 of the North Carolina Rules of Civil Procedure and instead appears to rely solely on her personal opinion of what she believes the law in North Carolina should be.
18. [Appellant's] conduct in this proceeding, which includes numerous and repeated misrepresentations of fact and law that are clearly intentional, is egregious, and such conduct alone provides a sufficient basis for sanctioning [Appellant] under the inherent authority of the Court.
Conclusions of Law
1. No reasonably competent attorney could conclude that the issues brought by Petitioner are non-justiciable in this proceeding. [Appellant's] amended motion for attorney's fees pursuant to G.S. 6-21.5 is thus neither well-grounded in fact after reasonable inquiry nor warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. It was also interposed to harass, delay and drive up the costs of litigation, all of which are improper purposes. This motion is frivolous as a matter of law and should be denied. Filing this frivolous motion is in violation of Rule 11 and requires the imposition of sanctions against [Appellant].
2. In contrast, the Petitioner's initial Petition, Amendment to the Petition, and Second Amended Petition were clearly *583 well-grounded in fact based upon reasonable inquiry and were warranted by Chapter 35A of the North Carolina General Statutes. None of them violate Rule 11.
3. As to Respondent's Amended Motion for Sanctions Against Petitioner, the Court finds that it is unwarranted by law and was interposed for an improper purpose, to wit: harassing Petitioner and causing needless increase in the cost of litigation. Therefore, it violates Rule 11 and requires that [Appellant] be sanctioned.
4. As to Respondent's Amended Motion for Sanctions Against Petitioner's Attorney, Respondent has failed to meet her burden of proving by the greater weight of the evidence that Petitioner's attorney signed any pleading that was not well grounded in fact, not warranted by existing law or was interposed for any improper purpose....
8. The evident purpose of the totality of [Appellant's] actions in the case was to protect the interests of Harriet Hopkins to the detriment of Respondent. This purpose may be inferred from the objective behavior of [Appellant], including but not limited to: alleging that this case is non-justiciable, filing Rule 11 motions against Petitioner, accepting employment in this case after having been appointed GAL and then withdrawing as GAL because of a conflict arising out of her friendship with Harriet Hopkins, objecting to a multidisciplinary evaluation of Respondent and then acting to have it stayed after the Clerk ordered it, accusing [Ms. Black-Oliver] of threatening to kidnap Respondent, and making repeated claims that Harriet Hopkins had done nothing wrong. This evident purpose goes beyond the scope of Rule 11 in its severity and its potential adverse effect on the administration of justice.
*391 The Court is justified in such situations to look beyond the sanctions of Rule 11 and invoke its inherent authority.
The trial court allowed Petitioner's Rule 11 motion, prohibited Appellant from accepting any fees from her representation of Respondent, ordered Appellant to pay Petitioner's attorneys fees, removed Appellant as Respondent's attorney, ordered the Clerk to deliver a copy of the order to the Executive Director of the North Carolina State Bar, and requested the State Bar open an investigation into Appellant's behavior.
*584 The trial court set a second hearing date to determine the amount of attorneys fees and costs. On 2 October 2014, Petitioner's counsel filed a petition for attorneys fees and costs and included a log of the billable time they spent defending Petitioner and themselves against Appellant's Rule 11 motion. Appellant filed a response on 13 October 2014, and objected to the attorneys fees and costs. She also filed a Rule 60(b) motion seeking relief from the 12 September 2014 order awarding Rule 11 sanctions against her. The parties were heard on their motions on 12 December 2014.
At the hearing, the trial court stated the following:
I've read [Appellant's] Rule 60 motion, and even though it[ ] cites provisions of law that weren't necessarily brought up in the hearing back in September, I don't' see anything in here that I didn't' take into consideration in entering my order. I mean, for instance, I specifically read everything in Michael Crowell's materials concerning judicial discipline. I don't consider what I did in that September 12th order to be discipline.... I specifically wasn't disciplining [Appellant] in my mind, and that's why I referred it to the State Bar.... All right. Well, just [ ] for the record and so everybody understands, I took this case as seriously as any case I have ever heard. I did independent research. I didn't rely on the filings done by either side because, frankly, I wanted to go outside those. I labored over what the right thing to do in this case was and what the right procedure was. I thought about it a lot.
The trial court denied Appellant's Rule 60 motion. Additionally, the trial court scrutinized the affidavits of billable hours submitted by Petitioner's counsel and found that their hourly rates of $250.00 and $285.00 per hour were "more than reasonable."
Thereafter, the trial court issued an order on 17 December 2014. In the order, the trial court ordered Appellant to pay Petitioner $122,987.72 in attorneys fees and costs. Appellant filed her notice of appeal on 13 January 2015.
Analysis
Rule 11 of the North Carolina Rules of Civil Procedure sets out the following:
Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one *585 attorney of record.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
N.C. Gen.Stat. § 1A-1, Rule 11(a) (2015). A Rule 11 motion signed in violation of this rule subjects an attorney to sanctions.
Further, "the central purpose of Rule 11 is to deter baseless filings and to streamline the administration and procedure of our courts." Adams v. Bank United of Texas FSB, 167 N.C.App. 395, 399, 606 S.E.2d 149, 153 (2004) (citation omitted). Rule 11 was enumerated to "prevent abuse of the legal system, [and]
*392 our General Assembly never intend[ed] to constrain or discourage counsel from the appropriate, well-reasoned pursuit of a just result for their client." Grover v. Norris, 137 N.C.App. 487, 495, 529 S.E.2d 231, 235 (2000).
"Under Rule 11, an objective standard is used to determine whether a paper has been interposed for an improper purpose, with the burden on the movant to prove such improper purpose." Johns v. Johns, 195 N.C.App. 201, 212, 672 S.E.2d 34, 42 (2009) (citation omitted). An "improper purpose" is "any purpose other than one to vindicate rights ... or to put claims of right to a proper test." Persis Nova Const., Inc. v. Edwards, 195 N.C.App. 55, 63, 671 S.E.2d 23, 28 (2009) (citation omitted). For example, an improper purpose may be inferred from the following:
[F]rom "the service or filing of excessive, successive, or repetitive [papers] ...," from "filing successive lawsuits despite the res judicata bar of earlier judgments," from "failing to serve the adversary with contested motions," from filing numerous dispositive motions when trial is *586 imminent, from "the filing of meritless papers by counsel who have extensive experience in the pertinent area of law," from "filing suit with no factual basis for the purpose of 'fishing' for some evidence of liability," from "continuing to press an obviously meritless claim after being specifically advised of its meritlessness by a judge or magistrate," or from "filing papers containing 'scandalous, libellous, and impertinent matters' for the purpose of harassing a party or counsel."
Id. (quoting Mack v. Moore, 107 N.C.App. 87, 93, 418 S.E.2d 685, 689 (1992) (quoting Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 13(C) (Supp. 1992))).
After considering the context of Appellant's Rule 11 motion, and carefully reviewing the record de novo, it is clear Appellant violated Rule 11 when she signed and filed her Rule 11 motion against Petitioner and Petitioner's counsel. At the outset of litigation, Appellant conceded this is "[not a] contested case" of incompetency. She admitted Respondent has dementia and/or Alzheimer's. The other GAL, Ms. Black-Oliver, conceded Respondent is incompetent and worked to have Respondent evaluated by a forensic psychiatrist. The record clearly shows Respondent has endured a downward trajectory of mental competency for many years. The evidence to support that contention comes from nurses, caregivers, Respondent's ex-husband, Hopkins, and others, not just Petitioner. Appellant alleges there is "a complete lack of [ ] evidence," and no "good faith" reason for Petitioner to bring this action. Her allegations are not supported by the record. The record shows Respondent failed to feed herself, suffered dehydrated, and sustained a serious fall, all due to her lack of mental capacity. Moreover, there is no substantive evidence to suggest Petitioner is trying to completely control Respondent, for financial incentive or otherwise, as Appellant alleges. Rather, the record shows Petitioner is financially well-off and has concern for his sister, due to his conversations with her ex-husband, friends, and caregivers, and after reviewing the durable power of attorney she executed that exposed her assets to Hopkins' potential self-gifting. Therefore, Petitioner and Petitioner's counsel carried their burden in proving Appellant's Rule 11 motion was filed for an objectively improper purpose.
First, I would hold the trial court's conclusions of law support its imposition of sanctions; the trial court's conclusions of law are supported by its findings of fact; and the findings of fact are supported by a sufficiency of the evidence. Therefore, the trial court's "decision to *587 impose" Rule 11 sanctions is binding on this court. Turner, 325 N.C. at 165, 381 S.E.2d at 714.
Second, I would hold the trial court did not abuse its discretion in selecting the specific sanctions at issue. The trial court assigned the excess cost of litigation to Appellant, and prevented her from further representation in a case that she originally claimed presented a conflict of interest. Further, the trial court referred the matter to the State Bar, and in doing so, it did not abuse its discretion.
*393 For the foregoing reasons, I respectfully dissent in favor of affirming the trial court.

There is no record evidence that Hopkins represented Respondent as a client beyond this durable power of attorney document. There is also no evidence that Hopkins self-gifted any of Respondent's property.

Petitioner filed a Standard Form AOC-SP-200. It states, inter alia, "Respondent has suffered significant cognitive decline and memory loss, apparently due to dementia, as well as physical problems such as dehydration, extreme fatigue, and bad falls."